**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

ANTHONY MAURICE WALLACE,

        Petitioner,

v.　　　　　　　　　　　　　　　　　Case No. 2: 17-cv-10873
　　　　　　　　　　　　　　　　　　　HON. ARTHUR J. TARNOW
THOMAS WINN,

        Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY**

In this habeas case filed under 28 U.S.C. § 2254, Petitioner Anthony Maurice Wallace challenges his state-court convictions for armed robbery, carrying a concealed weapon, possession of a firearm during the commission of a felony, and possession of a firearm while a felon. Wallace claims in support that he was denied his Sixth Amendment rights to counsel of his choice and to effective counsel, that the trial court lacked subject-matter jurisdiction, and that his right to a fair and impartial trial was violated. Respondent filed an answer opposing the petition, arguing that Wallace's claims are meritless or non-cognizable. For the reasons discussed, the Court will deny habeas corpus relief.

# I. BACKGROUND

On November 4, 2013, Clive Coateston agreed to give Wallace a ride to a nearby Tim Horton's restaurant. The men were acquaintances with mutual friends and a "hi and bye" relationship. (2/13/14 Trial Tr. at 17, ECF No. 9-6, PageID 362.)

On Wallace's request, Coateston stopped his van and pulled over near Seven Mile and Plainview Roads in Detroit, Michigan. Wallace told Coateston he was going to pay him five dollars for the ride. Instead, Wallace pulled out a "really small" silver revolver and pointed it at Coateston's chest. (*Id.* at 20, PageID 365.) Wallace told Coateston to give him everything.

Coateston replied that everything was in the van. Wallace told him to get out. On exiting the van, Coateston dropped his cellphone which broke into pieces. After picking up the pieces, Coateston backed away from the van with his hands in the air, crossing Seven Mile Road. He saw Wallace search through the van.

Police arrived on the scene within a few minutes. By this time, Wallace was walking away down the middle of Plainview Road. Coateston pointed Wallace out to police. Officers stopped a man walking down Plainview wearing a gray hoodie. Coateston, now back in his van, redirected them to Wallace who was walking farther down the street.

Wallace "bolted" from the officers' view. (*Id.* at 48, PageID 393.) Officers set up a perimeter to "maintain visual" on the area to which Wallace fled. (*Id.* at 50, PageID 395.) Ten or fifteen minutes later, a police canine unit arrived. The canine team found Wallace in a vacant house, wearing a gray hoodie. Police found a nickel-plated .38 revolver with rubber bands around the grip on a shelf in the house.

The only item stolen from the van was a bottle of Ferrari cologne. It was not recovered.

Wallace sent a letter to the trial court on January 29, 2014,[1] asking for a new attorney. On February 10, 2014, the day originally scheduled for trial (which was adjourned two days to accommodate the court's schedule), he renewed his request. Wallace told the court that his attorney had not visited him except for the day before the final conference. He also said that she had never discussed his case with him and that she told him she "wasn't too familiar" with his case. (2/10/14 Hr'g. Tr. at 3, ECF No. 9-4, PageID 299.) The court summarily denied Wallace's request.

---

[1] The January 29, 2014 letter to which Wallace refers in his petition (ECF No. 1 at 9, PageID 9) is not part of the habeas petition record but is acknowledged in the Court of Appeals' opinion. (ECF No. 9-8 at 2, Page ID 458.)

3

## II. PROCEDURAL HISTORY

A jury convicted Wallace on all counts after a two-day trial. He filed an appeal of right in the Michigan Court of Appeals where he raised the following claims through counsel: (i) The trial court abused its discretion in denying defendant's request for the appointment of substitute counsel and failing to perform an adequate inquiry into defendant's request, and (ii) the trial court erred in imposing consecutive sentences for the felony-firearm and concealed weapons convictions.

Wallace also claimed in a pro se supplemental brief[2] (i) that he was denied effective assistance of counsel, (ii) that the trial court lacked subject-matter jurisdiction due to the absence of probable cause for the arrest warrant and a resulting defective complaint, and (iii) that he was denied his Sixth Amendment right to a fair and impartial trial. The Michigan Court of Appeals affirmed Petitioner's convictions but remanded for the trial court to correct the consecutive sentencing error. *People v. Wallace*, No. 321455, 2015 WL 5022861 (Mich. Ct.

---

[2] Michigan criminal defendants have a right to file a brief in propria persona for claims they seek to raise on appeal, if appointed counsel do not include those grounds in their pleadings. *See* Standard 4, Michigan Supreme Court Administrative Order No. 2004-6, 471 Mich c, cii (2004) (establishing minimum standards for criminal defense appellate services). Defendants are also entitled to "procedural advice and clerical assistance" from appellate counsel to ensure their pro se pleadings will be accepted by the court. *Id.*

App. Aug. 25, 2015). Petitioner sought leave to appeal in the Michigan Supreme Court, which was denied. *People v. Wallace*, 499 Mich. 914 (2016).

Petitioner then filed the pending habeas corpus petition, in which he raises these claims:

> I. The court's denial without adequate inquiry of Petitioner's requests for substitution of counsel violated his right to counsel.
>
> II. His Sixth Amendment right to the effective assistance of counsel was violated.
>
> III. Procedural defects in the warrant and complaint resulted in a lack of subject-matter jurisdiction in the trial court.
>
> IV. He was denied a fair and impartial trial as guaranteed by the Sixth Amendment.

Respondent filed an answer to the petition arguing Wallace's claims are meritless and/or non-cognizable. In addition, Respondent asked that the petition be dismissed for lack of a signature, or at least stayed until the court returned the petition to Wallace for his signature and the signed petition received. On January 24, 2019, this Court ordered Petitioner Wallace to file a signed copy of his petition to address that deficiency. (ECF No. 12.) With receipt of Wallace's signed petition (ECF No. 13), the Court may now address Wallace's claims.

## III. DISCUSSION

### A. Standard of Review

This habeas petition is reviewed under the exacting standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). Under AEDPA, a federal court cannot grant habeas relief with respect to any claim adjudicated on the merits in a state court proceeding unless the state adjudication of the claim either

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme]

Court's decisions but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Williams*, 529 U.S. at 409. "[A]n 'unreasonable application of' those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (quoting *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014)). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

Section 2254(d) "does not require citation of [Supreme Court] cases -- indeed, it does not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). "[W]hile the principles of 'clearly established law' are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002)).

A federal habeas court must presume the correctness of state court factual determinations. *See* 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Finally, if the state court did not adjudicate a claim on the merits, "'AEDPA deference' does not apply and [this Court] will review the claim de novo." *Bies v. Sheldon*, 775 F.3d 386, 395 (6th Cir. 2014).

B.  **Claim II: Right to effective assistance of counsel[3]**

Wallace supports his claim of ineffective assistance of counsel by alleging that his attorney failed to investigate issues relating to the victim's credibility. Respondent argues that under the "doubly deferential" standard applied to habeas challenges of ineffective assistance of counsel, Petitioner was not deprived of effective assistance.

The first layer of the "doubly deferential" standard, *Abby v. Howe*, 742 F.3d 221, 226 (6th Cir. 2014) (citing *Burt v. Titlow*, 571 U.S. 12, 15 (2013)), is the familiar one of *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). To establish ineffective assistance, a habeas petitioner must show "that counsel's representation fell below an objective standard of reasonableness," and "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

---

[3] The Court will address Claim II before Wallace's first claim, that his Sixth Amendment right to counsel of his choosing was violated, because the analysis of the substitution of counsel argument relies in part on whether he received effective assistance of counsel.

8

proceeding would have been different." *Lafler v. Cooper*, 566 U.S. 156, 163 (2012) (citations omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Williams v. Lafler*, 494 F. App'x 526, 532 (6th Cir. 2012) (per curiam) (quoting *Strickland*, 466 U.S. at 694). *Strickland* requires a "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance[,]" *Abby*, 742 F.3d at 226 (citing *Strickland*, 466 U.S. at 689), and that "under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Bell v. Cone*, 535 U.S. 685, 698 (2002) (citing *Strickland*, 466 U.S. at 689).

Under the second layer of deference, AEDPA, the Court may "examine only whether the state court was reasonable in its determination that counsel's performance was adequate." *Id.*, citing *Burt*, 134 S. Ct. at 18. "'The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable,' which 'is different from asking whether defense counsel's performance fell below *Strickland*'s standard.'" *Harrington*, 562 U.S. at 101.

The state court of appeals' determination that Wallace received effective assistance of counsel was not unreasonable. Wallace argues that his counsel failed to challenge the complainant's contradictory statements and "made no effort to investigate" his case. (Pet. at 13, ECF No. 1, PageID 13.) In his petition, Wallace

notes that "[t]he alleged victim made inconsistent statements and the story made no sense." (Pet. Attach. at 11, ECF No. 1-1, PageID 121.)

Wallace's trial attorney applied exactly that theory in defending her client. She impeached the complainant over his contradictory statements and questioned aspects of his testimony that defied common sense. Counsel confronted Coateston with his initial statement to police that "nothing was taken." (2/13/14 Trial Tr. at 30, ECF No. 9-6, PageID 375.) She challenged his stories that he paused to pick up the pieces of his broken cellphone "[w]ith a man coming around with a gun after you"; that only a bottle of cologne was stolen, and not his wallet (despite the latter being in an unlocked glove box); and that he backed across Seven Mile Road, a busy four-lane street. (*Id.* at 32, 34, PageID 377, 379.)

Counsel's opening and closing arguments addressed the same issues, first, that Coateston's story to police changed. (*Id.* at 14, 82, PageID 359, 427.) Counsel also highlighted many aspects of Coateston's story which defied common sense, for instance, that Wallace would have chosen to rob him on Seven-Mile, a major road, instead of the residential streets on which they traveled to the Tim Horton's restaurant. (*Id.* at 79, Page ID 424.) Or that Coateston would take the time to pick up the pieces of his broken phone while someone was "coming at him with a gun." (*Id.* at 80, Page ID 425.)

Wallace also argues that ineffective assistance prevented the identification of an eyewitness to the crime. (Pet. at 13, ECF No. 1, PageID 13.) On this issue, it was not unreasonable for the state court to find the attorney's decisions strategic. "Counsel was entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies." *Harrington*, 562 U.S. at 107 (citations omitted). "The law does not require counsel to raise every available nonfrivolous defense." *Knowles v. Mirzayance*, 556 U.S. 111, 127 (2009). Wallace's attorney impeached Coateston over his failure to provide to police the name and address of an eyewitness he knew. (2/13/14 Trial Tr. at 35, ECF No. 9-6, PageID 380.) She could have decided that impeaching Coateston over his failure to identify that witness was strategically more favorable to the defense than any testimony the witness might provide. *See Yancey v. Haas*, 742 F. App'x 980, 985 (6th Cir. 2018) ("Rather than chase down and present potentially harmful witnesses, Yancey's counsel focused her defense on undermining the weakest part of the prosecution's case . . .").

Nor can Wallace establish prejudice. Based on the complainant's testimony identifying Wallace, with whom he was acquainted, and describing the crime, as well as the police officers' description of their pursuit and canine search, a different outcome is not reasonably likely. The state court's application of the *Strickland* factors to deny Wallace relief on this claim was not unreasonable.

**C. Claim I: Right to counsel of one's choice**

Wallace asserts that he sought substitute counsel via a letter to the trial court before renewing the request at the February 10, 2014 hearing. Wallace argued for substitution because of a breakdown in communications: His appointed attorney only visited him once, never discussed his case with him, and told him she was "not too familiar" with his case but that she did not think she could win it. (2/10/14 Hr'g. Tr. at 3, ECF No. 9-4, PageID 299.) Respondent argues that no clearly established federal law requires a trial court to inquire whether good cause exists for substitute counsel.

"The Sixth Amendment provides that '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence.'" *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006). "[T]he essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant[.]" *Wheat v. United States*, 486 U.S. 153, 159 (1988). This "right to effective counsel . . . imposes a baseline requirement of competence on whatever lawyer is chosen or appointed." *Gonzalez-Lopez*, 548 U.S. at 148. The Sixth Amendment's purpose "is simply to ensure that criminal defendants receive a fair trial[.]" *Wheat*, 486 U.S. at 159 (quoting *Strickland*, 466 U.S. at 689); *see also Mickens v. Taylor*, 535 U.S. 162, 166 (2002) ("This right has been accorded, we have said, 'not for its own sake, but because of the effect it has on the ability of the

accused to receive a fair trial.'") (quoting *United States v. Cronic*, 466 U.S. 648, 658 (1984)).

"The Sixth Amendment right to choose one's own counsel is circumscribed in several important respects[.]" *Wheat*, 486 U.S. at 159. These limitations may include "ethical standards," *id.* at 160; fairness (substitution request denied where defense counsel sought to represent "three conspirators of varying stature"), *id.* at 163; and "the demands of [the court's] calendar." *Gonzalez-Lopez*, 548 U.S. at 152 (citing *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983)).

A more pertinent constraint is that "a defendant may not insist on representation by an attorney he cannot afford. . ." *Wheat*, 486 U.S. at 159. As a result, indigent defendants do not enjoy an absolute right to their counsel of choice. *Gonzalez-Lopez*, 548 U.S. at 151 (citing *Wheat*, 486 U.S. at 159; *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624, 626 (1989)). The Sixth Amendment "guarantee[s] an effective advocate for each criminal defendant rather than . . . ensur[ing] that a defendant will inexorably be represented by the lawyer he prefers." *Abby*, 742 F.3d at 225 (6th Cir. 2014) (citing *Wheat*, 486 U.S. at 159). Because an indigent defendant has no absolute right to appointed counsel of his choice, and because the focus of the Sixth Amendment inquiry is on effective advocacy, "[a] criminal defendant who is dissatisfied with appointed counsel must show good cause to warrant substitution of counsel, such as a conflict of interest,

13

an irreconcilable conflict, or a complete breakdown in communication between the attorney and the defendant." *Smith v. Lockhart*, 923 F.2d 1314, 1320 (8th Cir.1991); *accord United States v. Blaze*, 143 F.3d 585, 593 (10th Cir.1998); *United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990). Reviewing courts must determine whether the "extent of the conflict between the attorney and client . . . was so great that it resulted in a total lack of communication preventing an adequate defense." *United States v. Vasquez*, 560 F.3d 461, 466 (6th Cir. 2009) (citing *United States v. Mack*, 258 F.3d 548 (6th Cir. 2001)).

Wallace is not entitled to habeas relief on this issue. A state court should inquire into a habeas petitioner's reasons to seek substitution of assigned counsel. *See Iles*, 906 F.2d at 1130 (establishing the federal trial court's duty to inquire into such a request). However, even if the trial court had a duty to inquire into the reasons for Petitioner's dissatisfaction with his trial attorney, and even though the court's inquiry here was inadequate, this claim would still fail.

Outside the habeas context, a reviewing court should evaluate a claim resulting from the denial of substitution of counsel for "the timeliness of the motion; the adequacy of the [trial] court's inquiry into the defendant's complaint; and the asserted cause for that complaint, including the extent of the conflict or breakdown in communication between lawyer and client (and the client's own responsibility, if any, for that conflict)." *Martel v. Clair*, 565 U.S. 648, 663 (2012).

14

"Because a trial court's decision on substitution is so fact-specific, it deserves deference; a reviewing court may overturn it only for an abuse of discretion." *Martel*, 565 U.S. at 663-64. A petitioner may also seek relief if he was so prejudiced by the court's "refusal to appoint new counsel [that it] resulted in a denial of effective assistance of counsel at trial." *Peterson*, 510 F. App'x 356, 366 (6th Cir. 2013) (citing *Brooks v. Lafler*, 454 Fed. App'x 449, 452 (6th Cir. Cir. 2012)). However, as explained in Part III.B, *supra*, Wallace has not demonstrated that his trial counsel was constitutionally ineffective.

Wallace's facts begin with the letter he sent the trial court on January 29, 2014, requesting new counsel. On February 10, the day originally scheduled for trial, the trial court itself requested a two-day adjournment of Wallace's trial. (2/10/14 Tr., ECF No. 9-4 at 3, PageID 299.) At the February 10 hearing, Wallace raised his request for substitution of counsel, stating:

> I would like to get a new lawyer. I have nothing against the lawyer right here, but she had not come see me. We have not discussed my case. The only time she has come see me was January 16th the day before my final conference. She told me that she wasn't too familiar with my case and I have been incarcerated since November 4. The only time she has come see me was th[e] day before the final conference. She didn't even come see me before trial.

(*Id.* at 3, PageID 299.) The court summarily denied the motion. (*Id.*) Wallace's request was timely, as the attorney's failure to communicate did not ripen until the time of his letter.

Further, the state court was unreasonable to find the trial court's inquiry adequate. A court "cannot properly resolve substitution motions without probing why a defendant wants a new lawyer[.]" *Martel*, 545 U.S. at 664. Here, the trial judge failed to ask Petitioner any questions on the record, nor did he ask defense counsel to respond to her client's concerns. By contrast, in typical examples of adequate inquiry, courts "engaged in multiple lengthy discussions" with the petitioner and trial counsel regarding their conflicts, *Vasquez*, 560 F3d at 467; and "allowed all of the interested parties to present their respective evidence and arguments[,]" *United States v. Saldivar-Trujillo*, 380 F.3d 274, 278 (6th Cir. 2004). *But see United States v. Johnson*, 612 F.App'x 345, 351 (6th Cir. 2015) ("[t]his Court's prior decisions indicate that, to meet this requirement, the district court simply must allow a defendant the opportunity to explain the attorney-client conflict as he perceives it.") (quoting *United States v. Marrero*, 651 F.3d 453, 465 (6th Cir. 2011)).

Despite the state court's unreasonable rulings on the inquiry and timeliness criteria, Wallace is not entitled to habeas relief for the denial of his request for substitution of counsel. He failed to demonstrate a breakdown in communications so severe it prevented an adequate defense. Wallace is unable to show that he was prejudiced by the court's denial, because he received effective assistance of counsel at trial. *Vasquez*, 560 F.3d at 468.

### D. Claim III: Subject-matter jurisdiction

Wallace next claims that the trial court lacked subject-matter jurisdiction because of a defect in the complaint. That is, no probable cause existed where the complaint relied on Coateston's inconsistent statements and no evidence was presented that the cologne bottle ever existed. This argument also fails, because state law as interpreted by state courts does not provide a basis for federal habeas relief. *Toler v. McGinnis*, 23 F. App'x 259, 266 (6th Cir. 2001) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67-68 n. 2 (1991); *Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000)).

Determining whether state law vests jurisdiction on a state court in a criminal case is not a federal court function. *Wills v. Egeler*, 532 F.2d 1058, 1059 (6th Cir. 1976). "[A] state court's interpretation of state jurisdictional issues conclusively establishes jurisdiction for purposes of federal habeas review." *Strunk v. Martin*, 27 Fed.App'x 473, 475 (6th Cir. 2001). Finally, any defects in the complaint are harmless in light of the jury's guilty verdict, because the verdict itself "demonstrates probable cause[.]" *United States v. Ellis*, 626 F. App'x 148, 155 (6th Cir. 2015) (citing *United States v. Mechanik*, 475 U.S. 66, 67 (1986)).

### E. Claim IV: The denial of a fair and impartial trial as guaranteed by the Sixth Amendment

Wallace's fourth claim for relief echoes Claim II, ineffectiveness of trial counsel, in that he attributes the denial of a fair and impartial trial to his attorney's

17

"unprofessionalism." (Pet. at 21, ECF No. 1, PageID 21.) He argues that counsel failed to investigate the relationship between Wallace and Coateston as "rival marijuana dealers." (*Id.*) Wallace's defense theory is that Coateston sought to get him "off of the street." (*Id.*)

As discussed above in Part III.B, *supra,* even without the extra layer of deference AEDPA requires, a defendant must overcome "strong presumption[s]" that "counsel's conduct [fell] within the wide range of reasonable professional assistance[,]" *Abby*, 742 F.3d at 226 (citing *Strickland*, 466 U.S. at 689), and that "under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Bell*, 535 U.S. at 698 (citing *Strickland*, 466 U.S. at 689). The Court incorporates by reference its discussion of Claim II's challenge to the effectiveness of counsel's performance and strategy, *supra* pp. 8-12.

### IV. CERTIFICATE OF APPEALABILITY

Habeas petitioners may not appeal a district court's decision unless a district or circuit judge issues a certificate of appealability (COA). 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1). A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve

encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). When, as here, "a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484.

Reasonable jurists could not conclude that the Court's assessment of Petitioner's claims is debatable or wrong. Nor could reasonable jurists conclude that the issues deserve encouragement to proceed further. The Court therefore declines to grant a certificate of appealability.

The standard for issuing a COA is a higher standard than the standard for granting in forma pauperis status on appeal. *Foster v. Ludwick*, 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002). A court may grant leave to proceed in forma pauperis if it finds that the appeal is not frivolous and could be taken in good faith. 28 U.S.C. § 1915(a)(3); *Foster*, 208 F. Supp. 2d at 764-65. Because an appeal in this case could be taken in good faith, the Court grants leave to appeal in forma pauperis should Petitioner decide to appeal this Court's decision.

## V. CONCLUSION

For the reasons stated above, Wallace's Petition for a writ of habeas corpus is DENIED. Furthermore, the Court DENIES a certificate of appealability, but finds Petitioner may proceed on appeal in forma pauperis.

SO ORDERED.

s/Arthur J. Tarnow  
ARTHUR J. TARNOW  
UNITED STATE DISTRICT JUDGE

Dated: March 25, 2019